TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00247-CV






General Motors Corporation, Appellant



v.



Carole Keeton Rylander, Comptroller of Public Accounts of the State of Texas; and John
Cornyn, Attorney General of the State of Texas, Appellees





FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT


NO. 97-12350, HONORABLE CHARLES F. CAMPBELL, JUDGE PRESIDING






 Appellant General Motors Corporation ("GM") brought suit against appellees, the
Comptroller of Public Accounts and the Attorney General of Texas, seeking a refund of franchise
taxes. Both parties moved for summary judgment. The trial court granted summary judgment in
favor of the Comptroller and denied GM's motion for summary judgment. We will affirm the trial
court's judgment.


BACKGROUND In addition to compensating its employees by paying them wages and salaries, GM
also compensates its employees in the form of pension and other post-retirement benefits. 
Conforming to the Comptroller's view that the amount of a taxpayer's obligation to pay such
benefits should be included in taxable surplus when calculating the taxpayer's franchise tax
liability, GM paid its franchise tax liability, including in surplus its pension and post-retirement
obligations. GM thereafter filed tax refund claims for report years 1991 through 1994. After the
Comptroller denied GM's request for the refund, GM brought suit in district court seeking a
refund of certain portions of its franchise tax payments. GM argued in district court, and argues
now on appeal, that the amount of its pension and post-retirement liabilities should be deducted
from its surplus, and that the refusal to deduct such amount violates the preemption provision of
the federal Employment Retirement Income Security Act ("ERISA"). See 29 U.S.C. § 1144
(1994). GM consequently moved for summary judgment on the basis that sections 171.109(a) and
171.109(j)(1) of the Franchise Tax Act violate ERISA's preemption provision. See Tex. Tax Code
Ann. §§ 171.109(a), (j)(1) (West Supp. 2000). In response, the Comptroller and the Attorney
General (collectively, "the Comptroller") moved for summary judgment on the basis that (1)
ERISA does not preempt the Franchise Tax Act, and (2) GM has no evidence that would change
the opinion of this Court or the Texas Supreme Court's denial of writ of error in Sharp v.
Caterpillar, Inc., 932 S.W.2d 230 (Tex. App.--Austin 1996, writ denied), or persuade the United
States Supreme Court to grant a petition for writ of certiorari. The district court granted the
Comptroller's motion for summary judgment and denied GM's motion. GM now appeals. 
Because we maintain that ERISA does not preempt the sections of the Texas Franchise Tax Act
at issue, we affirm the trial court's judgment.


DISCUSSION When, as in this case, the trial court's order granting summary judgment for one
movant and denying summary judgment for the other does not specify the grounds upon which it
rests, we may affirm the trial court's judgment if any of the grounds raised in the prevailing
movant's motion are meritorious. Carr v. Brasher, 776 S.W.2d 567, 569 (Tex. 1989). 

 Texas law imposes a franchise tax on corporations for the privilege of doing
business in Texas. Tex. Tax Code Ann. § 171.109 (West Supp. 2000). The franchise tax is
computed by applying the applicable tax rate to a corporation's taxable capital, which consists of
the corporation's stated capital plus the corporation's surplus. Id. § 171.101(a) (West 1992). At
issue in this appeal are sections 171.109(a) and 171.109(j)(1) of the Franchise Tax Act. Section
171.109(a) defines the components of the franchise tax base, including "surplus," while section
171.109(j)(1) details those liabilities a corporation may not exclude from its surplus calculation. 
Id. § 171.109(a), (j)(1).

 In Sharp v. Caterpillar, this Court, faced with facts and arguments virtually
indistinguishable from those GM here advances, held that Caterpillar's liability for certain post-retirement employee benefits did not qualify as debt and therefore could not be deducted from the
company's taxable surplus. Caterpillar, 932 S.W.2d at 234-35. We considered in detail both
Caterpillar's argument that sections 171.109(a) and 171.109(j)(1) of the Franchise Tax Act should
be interpreted to allow a deduction for the company's future benefits liability as well as their
argument that ERISA preempted these provisions. Id. at 234-39. After thorough analysis of the
sections at issue, we explained that the legislature added section 171.109 to the Tax Code in 1987
to provide a general definition of surplus, and subsequently added subsection (j) to that section in
1991 "to clarify how the general definition of surplus in subsection (a)(1) of the 1987 Act should
be applied in the context of employee benefits." Id. at 233-34. Based on the plain language of the
statute and the legislature's intent in enacting it, we sustained the Comptroller's argument that
Caterpillar's future liabilities for the employee benefits at issue could not be excluded from, and
therefore had to be included in, surplus. Id. at 234-35.

 Having determined that Caterpillar was required to include in surplus the amount
of its future liabilities for the employee benefits at issue, we next turned to the Comptroller's
contention that ERISA did not preempt the relevant provisions of the Franchise Tax Act. The
ERISA preemption provision states that ERISA "shall supersede any and all State laws insofar as
they may now or hereafter relate to an employee benefit plan" covered by the Act. 29 U.S.C.
§ 1144. The United States Supreme Court has held that a law "relates to" an employee benefit plan
if it has a "connection with" or "reference to" such plan. Shaw v. Delta Air Lines, Inc., 463 U.S.
85, 96-97 (1983). In Caterpillar, we did not affirmatively decide the issue of whether section
171.109(j), which clarifies one particular application of the general rule in section 171.109(a)(1),
was preempted by ERISA because Caterpillar's liabilities, like GM's liabilities in the present case,
would nevertheless be included in surplus under section 171.109(a)(1). We concluded that ERISA
did not preempt the relevant sections of the Franchise Tax Act because that statute "is part of a
generally applicable tax scheme that incidentally raises the costs of doing business for some
ERISA plans; therefore, the statute's connection to ERISA plans is too tenuous, remote, and
ephemeral to warrant preemption." Caterpillar, 932 S.W.2d at 239.

 GM in no way distinguishes the facts of this case from those present in Caterpillar. 
GM instead disagrees with our holding in Caterpillar and argues that we wrongfully decided the
issue because "[e]ven though the statute makes no reference to ERISA plans, nor even to liabilities
for employee compensation benefits, it is plain that the statute was targeted at including liabilities
under employee benefits plans in surplus." (Emphasis added.) GM's sole basis for its argument
rests upon its contention that in the earlier case, Caterpillar failed to illuminate for us evidence
showing that the legislature targeted obligations arising from ERISA benefit plans when it enacted
section 171.109. GM, however, merely urges an argument that we have previously addressed. 
In determining that ERISA did not preempt the sections of the Franchise Tax Act at issue, we
stated: 


[The Franchise Tax Act] clearly does not conflict with ERISA's substantive
provisions; ERISA does not impose any form of tax and does not address state tax
treatment of covered plans. Nor was section 171.109(a)(1) specifically targeted at
ERISA plans. The statute was intended to be generally applicable to all types of
contingent and estimated liabilities.



Id. at 236 (emphasis added). There is no evidence in the Tax Code that the Franchise Tax Act
singles out ERISA plans by limiting franchise tax deductions. We maintain, as we did in
Caterpillar, that "Tax Code section 171.109(a)(1) is a generally applicable statute that catches
ERISA plans in its broad sweep; therefore, the statute was not specifically targeted at ERISA
benefits . . . ." Id. at 237.

 Furthermore, we decline the invitation to overrule Caterpillar because our decision
is in accord with United States Supreme Court case law dealing with preemption. In New York
State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co., 514 U.S. 645
(1995), the Court recognized that the text of ERISA is clearly expansive, but warned that the text
should not be read too broadly: "If 'relate to' were taken to extend to the furthest stretch of its
indeterminacy, then for all practical purposes preemption would never run its course, for 'really,
universally, relations stop nowhere.'" Travelers, 514 U.S. at 655 (internal citation omitted);
accord De Buono v. NYSA-ILA Med. & Clinical Servs. Fund, 520 U.S. 806, 813 (1997). 
Preemption does not occur "if the state law has only a tenuous, remote, or peripheral connection
with covered plans, as is the case with many laws of general applicability." Travelers, 514 U.S.
at 661 (citing District of Columbia v. Greater Wash. Bd. of Trade, 506 U.S. 125, 130 n.1 (1992)).

 GM presents no arguments other than those considered in Caterpillar, nor does it
persuasively demonstrate that Caterpillar was wrongly decided. In short, GM offers no
compelling reason why we should effectively overrule our prior decision. We adhere to our
precedents for reasons of efficiency, fairness, and legitimacy. Weiner v. Wasson, 900 S.W.2d
316, 320 (Tex. 1995). As the Weiner dissent advises, we should "not succumb to a temptation to
continually revisit prior decisions as new fact situations arise." Id. at 332 (Owen, J., dissenting,
joined by Phillips, C.J., and Hecht, J.). "If we [do] not follow our own decisions, no issue could
ever be considered resolved." Id. at 320. Because we have already considered the arguments that
GM now presents, and because we have previously held that ERISA does not preempt sections
171.109(a) and (j)(i) of the Franchise Tax Act, we decline to revisit the issue or overrule our prior
decision. We accordingly overrule GM's issue on appeal. We affirm the trial court's judgment.

 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Patterson

Affirmed 

Filed: December 7, 2000

Do Not Publish


 in section 171.109(a)(1),
was preempted by ERISA because Caterpillar's liabilities, like GM's liabilities in the present case,
would nevertheless be included in surplus under section 171.109(a)(1). We concluded that ERISA
did not preempt the relevant sections of the Franchise Tax Act because that statute "is part of a
generally applicable tax scheme that incidentally raises the costs of doing business for some
ERISA plans; therefore, the statute's connection to ERISA plans is too tenuous, remote, and
ephemeral to warrant preemption." Caterpillar, 932 S.W.2d at 239.

 GM in no way distinguishes the facts of this case from those present in Caterpillar. 
GM instead disagrees with our holding in Caterpillar and argues that we wrongfully decided the
issue because "[e]ven though the statute makes no reference to ERISA plans, nor even to liabilities
for employee compensation benefits, it is plain that the statute was targeted at including liabilities
under employee benefits plans in surplus." (Emphasis added.) GM's sole basis for its argument
rests upon its contention that in the earlier case, Caterpillar failed to illuminate for us evidence
showing that the legislature targeted obligations arising from ERISA benefit plans when it enacted
section 171.109. GM, however, merely urges an argument that we have previously addressed. 
In determining that ERISA did not preempt the sections of the Franchise Tax Act at issue, we
stated: 


[The Franchise Tax Act] clearly does not conflict with ERISA's substantive
provisions; ERISA does not impose any form of tax and does not address state tax
treatment of covered plans. Nor was section 171.109(a)(1) specifically targeted at
ERISA plans. The statute was intended to be generally applicable to all types of
contingent and estimated liabilities.



Id. at 236 (emphasis added). There is no evidence in the Tax Code that the Franchise Tax Act
singles out ERISA plans by limiting franchise tax deductions. We maintain, as we did in
Caterpillar, that "Tax Code section 171.109(a)(1) is a generally applicable statute that catches
ERISA plans in its broad sweep; therefore, the statute was not specifically targeted at ERISA
benefits . . . ." Id. at 237.

 Furthermore, we decline the invitation to overrule Caterpillar because our decision
is in accord with United States Supreme Court case law dealing with preemption. In New York
State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co., 514 U.S. 645
(199